## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| SLING TV L.L.C., and | § | Case No. 3:21-cv-218 |
| NAGRASTAR LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ALEJANDRO GALINDO, ANNA | § | |
| GALINDO, MARTHA GALINDO, | § | |
| and OSVALDO GALINDO, | § | |
| individually and collectively | § | |
| d/b/a NITRO TV, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH"), Sling TV L.L.C. ("Sling"), and NagraStar LLC ("NagraStar" and collectively "Plaintiffs") file this action against Defendants Alejandro Galindo, Anna Galindo, Martha Galindo, and Osvaldo Galindo, individually and collectively doing business as Nitro TV ("Defendants"), for violations of the Federal Communications Act ("FCA"), 47 U.S.C. § 605, and Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201.

## NATURE OF THE ACTION

1.     DISH and Sling are television service providers that deliver programming live and on demand by satellite and internet to millions of authorized, fee-paying subscribers in the United States using security technologies provided by NagraStar and other content protection providers. Defendants operate an illicit streaming service known as Nitro TV, whereby Defendants acquire DISH and Sling's transmissions of television programming and then retransmit that programming without authorization to users of their Nitro TV service (the "Rebroadcasting Scheme").

## PARTIES

2.     Plaintiff DISH Network L.L.C. is a Colorado limited liability company having its

principal place of business in Englewood, Colorado.

3.     Plaintiff Sling TV L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

4.     Plaintiff NagraStar LLC is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

5.     Defendant Alejandro Galindo ("Alejandro") and Defendant Anna Galindo ("Anna") are believed to be spouses that reside in Friendswood, Texas.

6.     Defendant Osvaldo Galindo ("Osvaldo") is believed to reside in Dickinson, Texas and is Alejandro's brother.

7.     Defendant Martha Galindo ("Martha") is believed to reside in Galveston, Texas and is Alejandro and Osvaldo's mother.

8.     On information and belief, family members Alejandro, Anna, Osvaldo, and Martha each participate in, authorize, control, and receive direct financial benefits from the Rebroadcasting Scheme. Alejandro, Anna, Osvaldo, and Martha are believed to have acted as each other's agents when carrying out the Rebroadcasting Scheme and such actions by Alejandro, Anna, Osvaldo, and Martha were within the scope of that agency.

## JURISDICTION & VENUE

9.     Plaintiffs assert claims against Defendants for violations of 47 U.S.C. § 605 and 17 U.S.C. § 1201. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.     Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in Texas and through the Rebroadcasting Scheme have purposefully directed their conduct toward and purposefully availed themselves of the privileges of conducting business in Texas, causing injury to Plaintiffs in Texas.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## DEFENDANTS' REBROADCASTING SCHEME

### *Plaintiffs' Programming*

12.     DISH delivers television programming to millions of subscribers nationwide using a direct broadcast satellite system ("DISH Programming"). DISH's satellite transmissions of DISH Programming are secured using a conditional access system ("CAS") provided by NagraStar. The CAS uses a key-based encryption and decryption process to make DISH Programming accessible to only authorized DISH subscribers that purchased access to that DISH Programming and restricts unauthorized access to, copying, and retransmission of DISH Programming.

13.     Sling delivers television programming to millions of subscribers nationwide using the public internet ("Sling Programming"). Sling's internet transmissions of Sling Programming are secured using digital rights management ("DRM") technologies that include, based upon the subscriber's viewing platform, Google's Widevine DRM, Apple's FairPlay DRM, and Microsoft's PlayReady DRM. Each DRM has a key-based encryption and decryption process that is used to make Sling Programming accessible to only authorized Sling subscribers that purchased access to that Sling Programming and restricts unauthorized access to, copying, and retransmission of Sling Programming.

### *Unauthorized Rebroadcasting of Plaintiffs' Programming*

14.     Defendants' Nitro TV service was marketed and sold to consumers through the web domain Nitroiptv.com, which at times redirected to Tekkhosting.com (together, "Nitroiptv.com"). On information and belief, Alejandro registered Nitroiptv.com. Alejandro and Martha registered

3

the assumed business name Tekkhosting in Galveston County, Texas as co-owners of the business.

15.    Nitro TV was advertised as a subscription-based streaming service providing 7500 high-definition channels, movies and television series on demand, pay-per-view events, and sports programming, among other content, all for a low monthly fee. Nitro TV advertising emphasized converting customers from cable or satellite television services such as those provided by DISH.




*Excerpts from www.nitroiptv.com[1]*

16.    DISH Programming and Sling Programming has been retransmitted on Defendants' Nitro TV service without Plaintiffs' authorization, thereby allowing Nitro TV users to receive such programming without paying the requisite subscription fee to DISH or Sling. Periodic monitoring conducted on a sampling of channels on the Nitro TV service identified more than one hundred instances where Nitro TV was configured to retransmit DISH Programming or Sling Programming without authorization.

---

[1] Nitroiptv.com became inactive in approximately April 2020, at which time several Hollywood studios filed an action against Alejandro for copyright infringement arising from the Nitro TV service. *See* Case No. 20-cv-03219 (C.D. Cal., filed on April 3, 2020). Alejandro was preliminarily enjoined from infringing the studios' copyrights through the Nitro TV service and has since asserted a Fifth Amendment right against self-incrimination in defense of that case.



*DISH's Willow Cricket Channel Retransmitted on Nitro TV*

17.    The DISH Programming retransmitted on Nitro TV originated from DISH's satellite communications, while the Sling Programming retransmitted on Nitro TV is received from Sling's internet communications. Watermarks inserted into DISH's satellite communications for purposes of analyzing the Nitro TV service, and other identifiers unique to the television broadcasts of DISH and Sling, were detected when viewing DISH Programming and Sling Programming on Nitro TV, confirming DISH's satellite communications and Sling's internet communications are the source of the DISH Programming and Sling Programming retransmitted on the Nitro TV service.

18.    On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in establishing and controlling DISH subscription accounts and Sling subscription accounts used to obtain the DISH Programming and Sling Programming retransmitted on the Nitro TV service.

19.    On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in the circumvention of DRMs that control access to Sling Programming in order to retransmit Sling Programming on their Nitro TV service. The DRMs are believed to be circumvented using either a differential fault analysis attack

where faults are injected into the DRM to disrupt its operation and create pathways to extract the keys necessary to decrypt Sling Programming, or a man-in-the-middle attack whereby customized software is used to bypass the DRM by intercepting Sling Programming passing from the DRM's decryption library to the user's viewing platform.

<em>Defendants' Sale of Device Codes</em>

20.    Defendants profit from the Rebroadcasting Scheme through the sale of codes that are designed and produced to enable a set-top box or other internet-enabled device to access servers used to retransmit DISH Programming and Sling Programming on the Nitro TV service (a "Device Code"). A valid Device Code is required to access the Nitro TV service.

21.    Defendants sold Device Codes on Nitroiptv.com for approximately $20 per month of access to the Nitro TV service. Purchasers could also elect to purchase Device Codes that were valid for longer periods of time or allowed for additional device connections at varying prices.



<em>Excerpt from www.nitroiptv.com</em>

22.    Defendants also sold Devices Codes on Nitroiptv.com in bundles or panels referred to as "Reseller Credits." Device Code panels were marketed and sold to authorized resellers of the

6

Nitro TV service, who in turn sold the Device Codes to their own customers. Resellers purchased the Device Code panels from Defendants for approximately $10 per month of access to the Nitro TV service, having the ability to resell the Devices Codes for $20 and generate a significant profit. On information and belief, Osvaldo operated the Nitro TV reseller network, including by recruiting resellers for the Nitro TV service and maintaining Device Code panels sold by Defendants.



*Excerpt from www.nitroiptv.com*

23.    On information and belief, Defendants' authorized resellers also sold Device Codes for rebranded versions of the Nitro TV service, going by names such as Octane and XTV. DISH Programming and Sling Programming was retransmitted without Plaintiffs' authorization to users of the rebranded versions of the Nitro TV service. Defendants are believed to operate the rebranded

services as a continuation of, and in the same manner as, the Nitro TV service, as described above. [2]

24.     On information and belief, Defendants received millions of dollars from the sale of Device Codes using merchant services accounts and bank accounts held in the name of Alejandro, Anna, Osvaldo, and Martha, including accounts at PayPal, Stripe, Capital One, JPMorgan Chase, and Woodforest National Bank. Statements on Nitroiptv.com touted having "a large number of satisfied members," with "[o]ver 45,000 customers activated in the last 12 months," and "96% of the[] clients renew."

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the FCA, 47 U.S.C. § 605(a), Asserted by DISH

25.     DISH repeats and realleges the allegations in paragraphs 1-24.

26.     Defendants divulged, used, and assisted others to receive DISH Programming that originated from DISH's satellite communications through the Rebroadcasting Scheme, without the authorization of DISH and for the benefit of Defendants and users of their service that were not entitled to receive such DISH Programming, in violation of 47 U.S.C. § 605(a).

27.     Defendants' sale of Device Codes assisted users of the Nitro TV service to receive DISH Programming, without the authorization of DISH and for the benefit of Defendants and users of their service that were not entitled to receive such DISH Programming, in violation of 47 U.S.C. § 605(a).

28.     Defendants' violations of 47 U.S.C. § 605(a) were willful and for purposes of commercial advantage and private financial gain.

29.     Defendants were aware or had reason to believe that their actions violated 47 U.S.C.

---

[2] Defendants are believed to have transitioned their authorized resellers to rebranded versions of the Nitro TV service in response to the infringement case filed against Defendants in California, referenced in the previous footnote.

§ 605(a). Such violations have caused damage to DISH in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 47 U.S.C. § 605(a).

<strong><u>COUNT II</u></strong><br><strong>Violations of the FCA, 47 U.S.C. § 605(e)(4), Asserted by DISH and NagraStar</strong>

30.     DISH and NagraStar repeat and reallege the allegations in paragraphs 1-24.

31.     Defendants sell and distribute Device Codes for purposes of divulging, using, and assisting others to receive DISH Programming originating from DISH's satellite communications as part of the Rebroadcasting Scheme, in violation of 47 U.S.C. § 605(e)(4). Defendants intended for Device Codes to be used in divulging and receiving DISH Programming, without authorization from DISH and for the benefit of Defendants and users of their service that were not entitled to receive such DISH Programming, which is activity proscribed by 47 U.S.C. § 605(a).

32.      Defendants' violations of 47 U.S.C. § 605(e)(4) were willful and for purposes of commercial advantage and private financial gain.

33.     Defendants were aware or had reason to believe that their actions violated 47 U.S.C. § 605(e)(4). Such violations caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

<strong><u>COUNT III</u></strong><br><strong>Violations of the DMCA, 17 U.S.C. § 1201(a)(1)(A), Asserted by Sling</strong>

34.     Sling repeats and realleges the allegations in paragraphs 1-24.

35.     Sling uses technological protection measures to effectively control access to Sling's communications of Sling Programming, which includes works protected under the Copyright Act. Sling implements these technological protection measures with the copyright owners' consent.

36.     On information and belief, Defendants acquire Sling Programming for their service by directly engaging in, aiding and abetting, or acting in the scope of a principal-agent relationship with other persons to circumvent technological protection measures used to control access to Sling

9

Programming, in violation of 17 U.S.C. § 1201(a)(1)(A).

37.     Defendants' violations of 17 U.S.C. § 1201(a)(1)(A) were willful and for purposes of commercial advantage and private financial gain.

38.     Defendants were aware or had reason to believe that their actions violated 17 U.S.C. § 1201(a)(1)(A). Such violations have caused damage to Sling in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(1)(A).

## **PRAYER FOR RELIEF**

Plaintiffs request a judgment against Defendants as follows:

A.      For a permanent injunction under Fed. R. Civ. P. 65, 47 U.S.C. § 605(e)(3)(B)(i), and 17 U.S.C. § 1203(b)(1) that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with any of them that receives actual notice of the order, from:

1.      Receiving or assisting others in receiving DISH's satellite communications or the content of such communications without DISH's authorization, including through the Nitro TV service or any similar internet streaming service;

2.      Selling or distributing any device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications, including codes or credits used to access the Nitro TV service or any similar internet streaming service;

3.      Circumventing a DRM or any other technological protection measure that controls access to Sling's programming, including through the use of Sling subscription accounts to provide Sling programming for the Nitro TV service or any similar internet streaming service.

B.      For an order impounding and allowing Plaintiffs to take possession of and destroy

all Device Codes, circumvention technologies, and any other device or equipment in Defendants'

possession, custody, or control that the Court believes to have been involved in a violation of the

FCA or DMCA, pursuant to 47 U.S.C. § 605(e)(3)(B)(i) and 17 U.S.C. § 1203(b)(2);

C.    For an order requiring Defendants to preserve and turn over to Plaintiffs all hard

copy and electronic records regarding persons involved in the Rebroadcasting Scheme;

D.    Award DISH the greater of (1) its actual damages together with Defendants' profits

that are attributable to the violations identified in Count I, or (2) statutory damages up to $10,000

for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  In either

scenario, the damages should be increased by $100,000 for each violation, in accordance with 47

U.S.C. § 605(e)(3)(C)(ii);

E.    Award DISH and NagraStar collectively the greater of (1) their combined actual

damages together with Defendants' profits that are attributable to the violations identified in Count

II, or (2) statutory damages up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant

to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II);

F.    Award Sling the greater of (1) its actual damages together with Defendants' profits

that are attributable to the violations identified in Count III, or (2) statutory damages up to $2,500

for each violation of 17 U.S.C. § 1201(a)(1)(A), pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

G.    Award Plaintiffs their attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii)

and 17 U.S.C. § 1203(b)(4)-(5);

H.    For a complete and accurate accounting of all profits and other benefits received by

Defendants as a result of the wrongful conduct identified in this complaint;

I.    For pre and post-judgment interest on all damages awarded by the Court, from the

earliest date permitted by law at the maximum rate permitted by law; and

11

J.    For such additional relief as the Court deems just and equitable.

Dated: August 19, 2021.                    Respectfully submitted,

                                           **HAGAN NOLL & BOYLE LLC**

                                           s/ Timothy M. Frank
                                           Timothy M. Frank (attorney-in-charge)
                                           Texas Bar #24050624
                                           S.D. Tex. Bar #614705
                                           Two Memorial City Plaza
                                           820 Gessner, Suite 940
                                           Houston, Texas 77024
                                           Telephone: (713) 343-0478
                                           Facsimile: (713) 758-0146
                                           timothy.frank@hnbllc.com

                                           Maleeah M. Williams (of counsel)
                                           Texas Bar #24121889
                                           S.D. Tex. Bar #3644890
                                           maleeah.williams@hnbllc.com

                                           Attorneys for Plaintiffs DISH Network L.L.C.,
                                           Sling TV L.L.C., and NagraStar LLC