UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., SLING TV L.L.C., and NAGRASTAR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO GALINDO, ANNA GALINDO, MARTHA GALINDO, and OSVALDO GALINDO, individually and collectively d/b/a NITRO TV, <br><br> Defendants. | § § § § § § § § § § § § § § § § § | Case No. 3:21-cv-00218 |

**PLAINTIFFS' MOTION FOR SALE OF RESIDENTIAL PROPERTY**

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC (collectively with DISH, "Plaintiffs") move for an order authorizing the United States Marshal to levy and sell a residential property in Friendswood, Texas and apply the proceeds towards satisfaction of the $100.3 million judgment (Doc. 19, "Judgment") this Court entered against Defendants Alejandro, Anna, Martha, and Osvaldo Galindo ("Judgment Debtors").

**I.  INTRODUCTION**

Judgment Debtors violated federal laws through their operation of an illicit streaming service called Nitro TV, whereby Judgment Debtors circumvented security measures to steal Plaintiffs' television programming and then retransmitted that stolen programming to their own paying subscribers. Judgment Debtors generated substantial revenues totaling more than $10 million as a result of their theft. Judgment Debtors knew

1

full well their conduct was unlawful, disregarded pre-suit cease and desist correspondence, continued operating Nitro TV despite suit being filed, and actively took measures to conceal their wrongfully obtained revenues by moving bank accounts, wiring more than $1.5 million to Mexico, and paying nearly $1 million in cash for residential property in Friendswood – all directly traceable to revenue they reaped from Nitro TV. Texas courts have long held that Judgment Debtors are not entitled to use real estate or homestead exemptions as a safe haven for wrongfully acquired funds. Judgment Debtor's Friendswood property should be sold in satisfaction of the Judgment.

## II.   FACTS

### *The Judgment*

Judgment Debtors' Nitro TV service was built with one purpose in mind: steal television programming from legitimate providers such as Plaintiffs and resell that programming to users, reaping substantial benefits because no licensing fees are required to be paid for illicit programming. Plaintiffs' investigation of Nitro TV established hundreds of instances where the Judgment Debtor's service was configured to retransmit Plaintiffs' programming without authorization. (Eichhorn Decl. ¶ 3.) Judgment Debtors marketed Nitro TV with the intent of taking subscribers away from legitimate television providers such as Plaintiffs by encouraging customers to "Cut the Cord" and advertising the availability of premium programming for a monthly fee that is substantially less than the amounts the customers would have paid Plaintiffs – something Judgment Debtors could do because they stole the programming from Plaintiffs rather than paying to license that content. (*Id.* ¶ 4.)

Judgment Debtors' piracy-based business model generated substantial revenues. Judgment Debtors monetized Nitro TV by selling codes that allowed their users to access the service through various internet-enabled devices ("Device Codes"). (*Id.* ¶ 5.) Due to Judgment Debtors' default and failure to participate in this case, Plaintiffs did not have the benefit of obtaining discovery directly from them to identify the total number of Device Codes sold. Plaintiffs however were able to obtain information from Judgment Debtors' merchant service providers and financial institutions prior to moving for default judgment, establishing that Judgment Debtors sold at least 100,363 Device Codes and generated revenues in excess of $10 million. (*Id.*) The number of Device Codes Plaintiffs attributed to Judgment Debtors was extremely conservative as Plaintiffs requested statutory damages of $1,000 for each of the Device Codes sold by Judgment Debtors, resulting in the Judgment in the amount of $100,363,000.

Judgment Debtors were well aware of the infringing nature their Nitro TV service, not only because of the lengths they went to acquire and retransmit Plaintiffs' programming, but also because Judgment Debtors were specifically asked to stop infringing Plaintiffs' rights through pre-suit cease and desist correspondence. (*Id.* ¶ 6.) Judgment Debtors ignored that correspondence and continued retransmitting programming stolen from Plaintiffs even after this case was filed. (*Id.*) Indeed, Judgment Debtors were previously sued by another group of content providers in a separate copyright infringement action in a California federal court and that too was no deterrent in stopping Judgment Debtors' unauthorized retransmission of stolen television programming. *See Columbia Pictures Indus., Inc. v. Galindo*, No. 2:20-cv-03129, Doc. 1 (C.D. Cal., filed on April 3,

2020). In that case, Judgment Debtor Alejandro Galindo, who held himself out as the ringleader of the Nitro TV organization, asserted his Fifth Amendment privilege against self-incrimination and was sanctioned for destroying crucial evidence relating to the Nitro TV service. *Id.* at Doc. 209.

*Enforcement Efforts*

Judgment Debtors have not made a single payment towards satisfying the Judgment nor have they designated any non-exempt property to be levied upon despite being served by the United States Marshal with a demand letter and copy of the writ of execution. (*Id.* ¶ 7.) Moreover, the accounts that Judgment Debtors used to process payments received from their sale of Device Codes have been drained. For example: (1) despite more than $5.8 million being deposited into Judgment Debtors Martha and Osvaldo Galindo's respective Chase accounts, Chase responded to a writ of garnishment stating that they were only able to locate one active account in Osvaldo's name with a minimal balance of $49.22; (2) although more than $3 million was deposited into Martha's Capital One account, Capital One responded to a writ of garnishment stating that they were unable to locate any active accounts in Martha's name; (3) although more than $1 million was deposited into Judgment Debtor Anna Galindo's Woodforest National Bank account, Woodforest responded to a writ of garnishment stating Anna's account now has a negative balance; and (4) despite more than $164,000.00 being deposited into Judgment Debtor Alejandro Galindo's Wells Fargo account, Wells Fargo responded to a writ of garnishment stating that they too were unable to locate any active accounts. (*Id.*, Exs. 1-4; Docs. 34, 37-38, 44.)

4

All told, the entirety of the $10 million that Judgment Debtors are known to have received from their sale of Device Codes has been removed from Judgment Debtors' accounts. (Eichhorn Decl. 8.) More than $1.5 million of those funds was transferred to a Galindo family member in Mexico and another $181,730.00 was transferred to Alejandro Galindo's ex-wife, further demonstrating that Judgment Debtors have taken steps to conceal their illicit proceeds and prevent Plaintiffs from enforcing the Judgment. (*Id.*, Exs. 5-6.)

### *The Friendswood Property*

Judgment Debtors also attempted to conceal the illicit proceeds from their infringing Nitro TV service by purchasing the property located at 311 Scenic View, Friendswood, Texas 77546 ("Friendswood Property"). The Friendswood Property was purchased using funds that Judgment Debtors wrongfully acquired from their sale of Device Codes as shown by the following:

- The Paymentech payment processing account held in the name of Judgment Debtor Martha Galindo was used for the sole purpose of receiving payments for Device Codes. (*Id.* ¶ 9.)

- $5.5 million was deposited into the Paymentech account during the time period that Judgment Debtors sold Device Codes for their Nitro TV service. (*Id.*, Ex. 7.)

- $5.4 million was transferred from the Paymentech account to a Chase business checking account held in Martha's name. (*Id.*, Ex. 8.)

5

- 99.3% of the money deposited into Martha's Chase account during the two-year period leading up to the purchase of the Friendswood Property came from the Paymentech account. (*Id.*)

- $930,000.00 was withdrawn from Martha's Chase account on March 13, 2020 and deposited into a new Chase account opened in Martha's name that same day. (*Id.*, Ex. 9.)

- $925,913.18 was wired from Martha's new Chase account on March 16, 2020 to Chicago Title to purchase in full the Friendswood Property. (*Id.*, Exs. 10-11.)

The Friendswood Property is being held in the name of Judgment Debtor Alejandro Galindo and is not designated as a homestead for tax purposes according to Galveston County property records. (*Id.* ¶ 10, Ex. 12.) As set forth below, the Friendswood Property should be sold in satisfaction of the Judgment because the funds used to purchase the property were wrongfully acquired.

## III.   ARGUMENT

The Judgment may be enforced by a writ of execution in accordance with Texas state law. Fed. R. Civ. P. 69(a)(1). A writ of execution orders the seizure of Judgment Debtors' non-exempt property, including real property, so that property can be sold and the proceeds applied towards the Judgment. *See Jong Ik Won v. Fernandez*, 324 S.W.3d 833, 834 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Court issued a writ of execution on July 21, 2022 that remains enforceable. Tex. Civ. Prac. & Rem. Code Ann. § 34.001. The Court has the authority to determine whether the Friendswood Property should be sold

pursuant to its writ of execution. *See Thomas v. Hughes*, 27 F.4th 995, 1018 (5th Cir. 2022) ("[A] district court has 'jurisdiction in subsequent proceedings for the exercise of its inherent power to enforce its judgments.'") (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)).

The Friendswood Property is subject to the Court's writ of execution unless the property qualifies for homestead protection. TEX. CONST. art. XVI, § 50; Tex. Prop. Code Ann. § 41.001. Homestead protection does not apply if the Friendswood Property was purchased with wrongfully acquired funds. *See, e.g., Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App.—El Paso 1967, writ ref'd n.r.e.) ("It has long been decided that homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or properties."); *Deluxe Barber Sch., LLC v. Nwakor*, 609 S.W.3d 282, 298 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("[W]hen wrongfully acquired funds are used to purchase real property, no homestead rights can attach to that property."); *see also Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-076-H, 2021 WL 1398972, at *3 (N.D. Tex. Mar. 12, 2021) (finding no homestead protection applies where property was obtained with wrongfully acquired funds); *Byrom v. Penn*, No. 12-15-00033-CV, 2016 WL 4447698, at *3 (Tex. App.—Tyler Aug. 24, 2016, pet. denied) (same); *Brandsom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 928 (Tex. App.—Fort Worth 1994, writ denied) (same).

The Friendswood Property does not qualify for homestead protection under this well-established Texas law because the property was purchased using wrongfully acquired funds that Judgment Debtors received from their infringing Nitro TV service. *Supra* Part

7

II. The funds used to purchase the Friendswood Property were traced directly to the Paymentech account held in the name of Judgment Debtor Martha Galindo that was used for the sole purpose of receiving payments for Device Codes. *Id.*; *see Crawford v. Silette*, 608 F.3d 275, 281 (5th Cir. 2010) (affirming there was no protection under analogous Florida homestead laws, and distinguishing situations involving judgment creditors where homestead was applied because "the *fraudulently obtained* funds can be traced directly into the homestead"). In fact, at no time during the operation of Nitro TV did Judgment Debtors have a legitimate stream of income sufficient to purchase the Friendswood Property with $925,913.18 in cash. (Eichhorn Decl. ¶ 11.)

The money that Judgment Debtors took in from their sale of Device Codes was wrongfully acquired. Judgment Debtors were found in the Judgment to have violated the Federal Communications Act, 47 U.S.C. § 605 ("FCA"), and Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA"). The damage provisions of the FCA and DMCA are intended to, among other things, disgorge Judgment Debtors' ill-gotten gains and compensate Plaintiffs for revenue lost due to Judgment Debtors' infringing activity. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II); 17 U.S.C. § 1203(c)(2), (c)(3)(A); *see also Cmty. Television Sys. v. Caruso*, 284 F.3d 430, 436 (2d Cir. 2002) (awarding FCA statutory damages to compensate for lost revenue); *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 276 (5th Cir. 2020) (observing DMCA statutory damages serve a compensatory function). Judgment Debtors' business model was to take users away from legitimate pay-television providers such as Plaintiffs, as demonstrated by their marketing of Nitro TV, and that model was highly successful as Judgment Debtors

8

generated more than $10 million from their sale of Device Codes that enabled Nitro TV users to access programming stolen from Plaintiffs without having to pay the requisite subscription fee. (Eichhorn Decl. ¶¶ 3-4.) In short, the Device Code payments that Judgment Debtors collected from Nitro TV users is money that should have been paid to Plaintiffs.

Moreover, homestead protection should not apply because it would unjustly enrich Judgment Debtors by allowing them to shield their wrongfully acquired funds in the Friendswood Property. *See Crawford*, 608 F.3d at 279-80 (emphasizing that homestead laws should not be applied where "the party claiming the homestead protection would be unjustly enriched"). Indeed, Judgment Debtors owned other more modest properties in the Galveston area that they claimed as their homesteads at the time the Friendswood Property was purchased. (Eichhorn Decl. ¶ 12, Ex. 13.) Judgment Debtors Martha and Osvaldo continue to own those properties and claim homestead protection over them. (*Id.*, Ex. 14.) Judgment Debtors Alejandro and his wife Anna sold their homestead several months after the Friendswood Property was purchased and deposited the funds into Anna's bank account. (*Id.* ¶ 13, Ex. 15.) Judgment Debtors will be unjustly enriched if they are allowed to use homestead protection to shield an additional $1 million in funds wrongfully acquired from their Nitro TV service in the Friendswood Property.

IV.   **CONCLUSION**

The Court should grant this motion and enter an order authorizing the United States Marshal to levy and sell the Friendswood Property in satisfaction of the Judgment. The sale of the Friendswood Property is necessary to disgorge the funds that Judgment Debtors

9

wrongfully acquired from their resale of Plaintiffs' stolen content and prevent Judgment Debtors from being unjustly enriched. Judgment Debtors have existing homesteads or the proceeds from them, as well as other funds received as part of the $10 million in revenues that Judgment Debtors generated from Nitro TV, such that exempting the Friendswood Property from collection would result in a windfall to Judgment Debtors.

Dated: October 12, 2022.          Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

s/ Timothy M. Frank
Timothy M. Frank (attorney-in-charge)
Texas Bar #24050624
S.D. Tex. Bar #614705
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
timothy.frank@hnbllc.com

Maleeah M. Williams (of counsel)
Texas Bar #24121889
S.D. Tex. Bar #3644890
maleeah.williams@hnbllc.com

Attorneys for Plaintiffs DISH Network L.L.C., Sling TV L.L.C., and NagraStar LLC

## CERTIFICATE OF SERVICE

I certify that on October 12, 2022, Plaintiffs' Motion for Sale of Residential Property, Declaration of Bert Eichhorn, and Proposed Order were served by mail on Defendants pursuant to Local Rule 5, at the following addresses which are Defendants' last known residences:

Alejandro Galindo and Anna Galindo
311 Scenic View,
Friendswood, Texas 77546

Osvaldo Galindo
3110 Colony Drive,
Dickinson, Texas 77539

Martha Galindo
4810 Alamo Drive,
Galveston, Texas 77551

s/ Timothy M. Frank
Timothy M. Frank (attorney-in-charge)

Attorney for Plaintiffs DISH Network L.L.C., Sling TV L.L.C., and NagraStar LLC